UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Willie J. Halsell, *et al.*,

    Plaintiffs,

v.

Anthony Etter, *et al.*,

    Defendants.

Case No. 1:04cv63

Judge Michael H. Watson

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Motion for Summary Judgment. (Doc. 9)  Plaintiffs have filed a Response (Doc. 13) and Defendants have filed a Reply. (Doc. 19)  This matter is now ripe for review.

**I.  FACTUAL BACKGROUND**

City of Cincinnati Police Officers Charles Zopfi and Antonio Etter were dispatched to a shooting at or near 1111 Elm Street on May 1, 2003 at or around 3:00 p.m. (Doc. 9-4, Charles Zopfi Aff. ¶ 3; Doc. 9-3, Antonio Etter Aff. ¶ 3)[1]  When they arrived at 1111 Elm Street, Officers Zopfi and Etter were encountered by a number of citizens pointing in a northeasterly direction stating that the suspect who committed the shooting ran toward West 12th Street. (Id. ¶ 5; Id. ¶ 5)  When they reached West 12th Street, several citizens told Officers Zopfi and Etter that the shooting suspect ran into a barbershop. (Id. ¶ 6; Id.

---

[1]The Court notes that the Complaint and Defendants' Motion for Summary Judgment both refer to Officer Etter as "Anthony Etter."  However, Officer Etter's signature on his affidavit clearly shows that his first name is Antonio, not "Anthony."

¶ 6) Officers Zopfi and Etter proceeded to the front entrance of the barbershop and requested that additional police units respond to the scene. (Id. ¶ 7-8; Id. ¶ 7-8) In response, Officer Dean Chatman arrived on the scene. (Doc. 9-2, Dean Chatman Aff. ¶ 9)[2] Officers Chatman and Zopfi then entered the barbershop with their guns pointed at the low ready position. (Chatman Aff. ¶ 9; Zopfi Aff. ¶ 13) Initially, no one in the barbershop matched the general description of the suspect. (Chatman Aff. ¶ 14; Zopfi Aff. ¶ 15) As the two officers approached the rear of the barbershop, a man matching the general description of the suspect exited from a bathroom. (Chatman Aff. ¶ 15; Zopfi Aff. ¶ 16) Officer Chatman handcuffed the man and exited the barbershop. (Chatman Aff. ¶ 16) It was determined that this man was not the shooting suspect, and he was released. (Id. ¶ 17-18)[3] None of the Plaintiffs were arrested or detained. (Id. ¶ 19)

Plaintiffs' version of the facts differs somewhat. Plaintiffs dispute whether the officers were informed by citizens in the area that the suspect had run into the barbershop. Plaintiffs have submitted the Affidavit of Betty Kelow, who lives above the barbershop. (Doc. 13-2, Betty Kelow Aff.) Kelow states that she told the officers that she saw a man run past the barbershop and turn into an alley next to the barbershop. (Id. ¶ 1) Kelow states that the officers did not want to hear from her, and told her to clear the area and get out of the way. (Id.)

---

[2]The Court notes that the Complaint and Defendants' Motion for Summary Judgment both refer to Officer Chatman as "Chapman." However, Officer Chatman's signature on his affidavit clearly shows that his name is Chatman, not "Chapman."

[3]The person handcuffed is not a Plaintiff in this case.

In their affidavits, Plaintiffs Reuben Mundy, Willie Halsell, and Aaron Johnson state that when the officers entered the front door of the barbershop, the officers had their guns in their hands, and their arms were extended in a slanting downward position toward the floor. (Doc. 13-2, Reuben Mundy Aff. ¶ 2; Willie Halsell Aff. ¶ 2; Aaron Johnson Aff. ¶ 1) Plaintiffs state that the officers were yelling, "where is he, where is he?" (Mundy Aff. ¶ 2; Halsell Aff. ¶ 2; Johnson Aff. ¶ 2) Plaintiffs state that the officers then raised their guns to upper body level and began pointing the guns from person to person. (Mundy Aff. ¶ 2; Halsell Aff. ¶ 2; Johnson Aff. ¶ 2)

Plaintiff Basil Lewis explains that he went outside before the officers entered the barbershop. (Doc. 13-2, Basil Lewis Aff. ¶ 2) Lewis states that a short, white officer pointed a gun at him and told him to put his hands up against a parked car. (Id.) Lewis states that he told the officer that he worked in the barbershop and would not comply. (Id.) Lewis states that the officer kept pointing the gun at him and ordering him to comply. (Id.) Lewis explains that after the other officers brought the customer out of the barbershop in handcuffs, he and the officer exchanged words, the officer made an obscene gesture, and then left in his police cruiser. (Id. ¶ 4-5)

In their Complaint, Plaintiffs have brought claims under 42 U.S.C. § 1983 against Officers Zopfli, Etter, and Chatman in their individual capacities. (Doc. 1) Plaintiffs claim that Defendants deprived them of liberty without due process in violation of the Fourteenth Amendment and their right to be free from unreasonable searches and seizures under the Fourth Amendment. (Id.)

## II. ARGUMENTS OF THE PARTIES

Defendants argue that they are entitled to qualified immunity from Plaintiffs' section 1983 claims. Defendants argue that Plaintiffs cannot show a constitutional violation because Plaintiffs have not specifically identified the officers who violated their rights.[4] Plaintiffs argue further that pointing a gun at the low ready position upon entering a public establishment does not constitute a violation of any constitutionally protected right. Defendants argue that even if Plaintiffs are able to show a constitutional violation, Plaintiffs cannot show that the action taken by Defendants was objectively unreasonable. Defendants point to Cincinnati Police procedure which states that officers who are attempting to locate armed suspects are authorized to have their firearms in hand and pointed in a safe direction. Defendants state that they were also reasonably mistaken that the suspect had entered the barbershop.

Plaintiffs respond that they have established a constitutional violation because there was a "seizure" when they felt that they could not move or depart without a present danger of bodily injury. Plaintiffs argue that Defendants' conduct was objectively unreasonable because Kelow told them that she saw a man running down the alley next to the barbershop.

---

[4]The argument that Plaintiffs cannot show a constitutional violation because Plaintiffs have not specifically identified the officers who violated their rights makes no sense. In their affidavits, Defendants themselves identify which officers entered the barbershop. Therefore, the Court will not address this argument further. While the name of the officer who remained outside with Plaintiff Lewis is not entirely clear from the record, Plaintiffs focus their attention on the conduct of Officers Zopfi and Etter, who were the officers who entered the barbershop.

### III. ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252. However, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986).

The doctrine of qualified immunity protects government officials acting in their official capacities from damages if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), citing, *Procunier v. Navarette*, 434 U.S. 555, 565 (1978). Qualified immunity involves a two-step inquiry:

> First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. If the court finds a constitutional violation, it must then consider whether the violation involved "'clearly

established constitutional rights of which a reasonable person would have known.'"

*Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002), *quoting*, *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

While defendant bears the burden of pleading the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002), *citing*, *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992). The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Id.*, *citing, Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir.1991).

**A.    Constitutional Violation.**

    1.    *Fourteenth Amendment.*

Plaintiffs claim that Defendants deprived them of their liberty without due process of law in violation of the Fourteenth Amendment. However, reliance upon the Due Process Clause is misplaced in this context because it is the Fourth Amendment that establishes protections in the criminal justice system. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005). The "Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interest always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including detention of suspects pending trial." *Id.*, *quoting*, *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975). The Due Process Clause does not mandate any additional

safeguards beyond the Fourth Amendment. *Id.* Therefore, Defendants are entitled to summary judgment on Plaintiffs' section 1983 claim insofar as it is based upon the Fourteenth Amendment.

### 2. *Fourth Amendment.*

Plaintiffs claim that Defendants "seized" them in violation of the Fourth Amendment. The "seizure" of an individual takes place when "by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980); *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968). A person's liberty is restrained if a reasonable person in the circumstances would not believe that he or she were free to leave and ignore the officer's requests. *Bennett v. City of Eastpointe*, 410 F.3d 810, 821 (6th Cir. 2005), *citing*, *Mendenhall*, 446 U.S. at 554. Coercive or intimidating behavior supports a reasonable belief that compliance is compelled. *Cassady v. Tackett*, 938 F.2d 693, 696 (6th Cir. 1991), *citing*, *United States v. Collis*, 766 F.2d 219, 221 (6th Cir.), *cert. denied*, 474 U.S. 851 (1985).

It was reasonable for the Plaintiffs inside the barbershop to believe that they were not free to leave and ignore the officers requests. By entering the barbershop, yelling with guns draw, the officers exhibited coercive or intimidating behavior. Therefore, the Court finds that there was a "seizure" of Plaintiffs Halsell, Johnson, Jones, and Mundy. However, in his affidavit, Plaintiff Lewis states that even though the officer outside pointed a gun at him and ordered him to put his hands up against a parked car, he told the officer that he would not comply. Nevertheless, the Court finds that a *reasonable* person in the circumstances would not believe that he was free to ignore the officer's requests. Accordingly, there was a "seizure" of Plaintiff Lewis. *Accord McCoy v. City of Monticello*,

342 F.3d 842, 847 (8th Cir. 2003) (finding seizure where officer approached driver with gun drawn) .

However, "'[s]eizure' alone is not enough for section 1983 liability; the seizure must be 'unreasonable.'" *Brower v. City of Inyo*, 489 U.S. 593, 597 (1989). To determine the reasonableness of a seizure, this Court must look to the totality of the circumstances and evaluate them from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The reasonableness of an officer's use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. In addition, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id*. at 396-97; *see also Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000) (". . . under *Graham*, we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene."), *quoting*, *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

Here, accepting Plaintiffs' version of the facts as this Court must, the officers raised their weapons to the level of Plaintiffs' upper bodies, and pointed them from person to person. Looking at the totality of the circumstances and evaluating them from the viewpoint of a reasonable officer on the scene, the Court finds that the officers' behavior was not unreasonable.[5] Defendants were in pursuit of an armed suspect. Defendants were told

---

[5]Plaintiffs make no argument regarding the reasonableness of the conduct of the officer outside with Plaintiff Lewis. Therefore, Defendants would clearly be entitled to summary judgment

that the suspect had entered the barbershop.[6] While there is evidence that Kelow, a bystander outside the barbershop, told Defendants that a man ran down the alley next to the barbershop, the Court finds that it was reasonable for the officers enter the barbershop with guns drawn even after receiving this conflicting information. The Court also finds it was reasonable for the officers to raise their weapons to the level of Plaintiffs' upper bodies and point them from person to person. It was reasonable for Defendants to believe that they were entering into a dangerous situation and needed to protect themselves. This belief was reasonable even though it was mistaken. *See Pray v. City of Sandusky*, 49 F.3d 1154, 1160 (6th Cir. 1995) (recognizing the need to allow some latitude for honest mistakes that are made by officers in dangerous and difficult situations). As the Supreme Court has reminded courts, the Fourth Amendment addresses "misuse of power," not the accidental effects of otherwise lawful government conduct. *Brower*, 489 U.S. at 596, *citing*, *Byars v. United States*, 273 U.S. 28, 33 (1927).

Even though the Court has determined that there was no constitutional violation, the Court will proceed to the next step in the qualified immunity analysis: whether the violation involved clearly established constitutional rights of which a reasonable person would have known.

---

on Plaintiff Lewis' claim.

[6]While Plaintiffs would have the Court read the Kelow Affidavit as evidence that Defendants were not informed by citizens in the area that their suspect had run into the barbershop. Kelow merely states that she attempted to tell the officers that she saw a man run down the alley.

**B.     Clearly established constitutional rights of which a reasonable person would have known.**

The inquiry into whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  It is not enough in this case that the right to be free from unreasonable searches and seizures is clearly established.  The Supreme Court has explained "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* at 202, *quoting*, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Thus, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Id*.  The action's unlawfulness must be "apparent" from pre-existing law.  *Anderson*, 483 U.S. at 640.  A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court in the state in which the alleged constitutional violation occurred.  *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1996).  "Although the absence of a case on point does not necessarily endow a public official with public immunity, 'when this court can uncover only some generally applicable principle, its specific application to the relevant controversy must again have been 'clearly foreshadowed by applicable direct authority.'"  *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999), *quoting*, *Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998).

Plaintiffs have not pointed to any decision holding that a police officer violates an individual's Fourth Amendment right to be free from unreasonable seizure if he momentarily raises his gun in the individual's direction during the pursuit of a suspected shooting suspect.  Nor is the Court aware of any case law which would clearly establish that police officers are not entitled to assume that people suspected of committing a shooting are armed and dangerous.  Therefore, the Court finds that Plaintiffs have not established that Defendants violated clearly established constitutional rights of which a reasonable person would have known.

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 9) is hereby **GRANTED**.  This matter shall be closed and stricken from the docket of this Court.

**IT IS SO ORDERED.**

                                                  s/Michael H. Watson
                                        Michael H. Watson, Judge
                                        United States District Court